

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLACIDA VELASCO, *an individual and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>HYATT CORPORATION, a Delaware stock corporation doing business as Hyatt Regency Mission Bay; KATHERINE JAIME, an individual; and DOES 1 through 100, inclusive,<br><br>Defendant. | Case No.:  25-cv-2782-TWR (MSB)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND ACTION TO STATE COURT**<br><br>(ECF No. 8) |

Presently before the Court is Plaintiff Placida Velasco's Motion to Remand ("Mot.," ECF No. 8), as well as Defendant Hyatt Corporation's Opposition ("Opp'n," ECF No. 10), and Plaintiff's Reply ("Reply," ECF No. 12) in Support of the Motion.  The Court heard oral argument on the Motion on March 12, 2026.  (*See* ECF No. 14.)  After considering the Parties' arguments, the Notice of Removal, and the relevant law, the Court **GRANTS** Plaintiff's Motion to Remand.

/ / /

/ / /

/ / /

1

## BACKGROUND

**I.      Factual Background**

Plaintiff filed this putative class action against Defendants for violations of the California Labor Code on August 18, 2025, in San Diego County Superior Court.  (*See generally* ECF No. 1-2 Exh. A ("Compl.").)  Plaintiff alleges the following violations: (1) failure to pay overtime wages (*id.* ¶ 14), (2) failure to pay minimum wages (*id.* ¶ 15), (3) failure to provide uninterrupted meal periods (*id.* ¶ 16), (4) failure to authorize and permit rest breaks (*id.* ¶ 17), (5) failure to pay the full amount of wages upon termination or resignation (*id.* ¶ 18), (6) failure to provide itemized wage statements (*id.* ¶ 19), (7) failure to pay wages in a timely fashion (*id.* ¶ 20), and (8) failure to indemnify class members for the costs in laundering mandatory work uniforms and using cell phones for work purposes (*id.* ¶ 21).  Plaintiff also alleges "Defendants have had a consistent policy of failing to provide" class members with compensation at their final rate of pay for unused vested paid vacation days and failing to provide class members with the rights provided to them under the Healthy Workplace Healthy Families Act of 2014.  (*Id.* ¶¶ 23–24.)  Further, when alleging typicality, Plaintiff states Defendants had a "common course of conduct in violation of laws and regulations."  (*Id.* ¶ 32.)

On October 17, 2025, Defendant Hyatt Corporation ("Defendant") removed this action to this Court.  (*See id.*)  Defendant's Notice of Removal states, "[d]uring the relevant time period identified in the Complaint, Hyatt employed approximately 565 non-exempt hourly employees at the Hyatt Regency Mission Bay who worked a total of approximately 45,625 workweeks."  (ECF No. 1 ("NOR") at 11 (citing ECF No. 1-4 ("Strittmatter Decl.") ¶ 5).)  Further, Defendant states "[t]he average hourly rate of pay for these individuals is approximately $22.04 per hour during the proposed class period."  (*Id.*)  On December 23, 2025, Plaintiff filed the instant motion to remand this action to state court.  (*See* ECF No. 8.)  In Opposition to Plaintiff's Motion to Remand, which challenges Defendant's amount in controversy ("AIC") calculations, Defendant submitted a Declaration of Julian Pankhurst, a "Manager – Workforce Management Solutions for Enterprise Applications."

(ECF No. 10-1 ("Pankhurst Decl.") ¶ 2.)  He states that the "565 current and former non-exempt employees . . . worked 7.3 hours per day and 4.25 days per week" in the relevant period.  (*Id.* ¶ 6.)  Further, the 245 former non-exempt employees that were terminated during the relevant period "worked an average shift of 6.63 hours per day."  (*Id.* ¶ 7.)

## II.    Whether Plaintiff Makes a Facial or Factual Attack

A plaintiff can contest the amount in controversy by making either a "facial" or "factual" attack on the defendant's jurisdictional allegations.  *See Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) (citing *Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir. 2020)).  A facial attack asserts that the defendant's assumptions are insufficient on their face to invoke federal jurisdiction.  *See id.*  "A factual attack, however, need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *Id.* at 700.  When a plaintiff makes a facial attack, a defendant does not need to support its jurisdictional allegations with competent proof, under the same evidentiary standard that governs in the summary judgment context.  *See id.* (citing *Salter*, 974 F.3d at 964).  In contrast, when a plaintiff makes a factual attack, the defendant must support their jurisdictional allegations with competent proof "under the same evidentiary standard that governs in the summary judgment context." *Salter*, 974 F.3d at 964 (citation omitted).

Here, Plaintiff's Motion indicates she is making a facial attack and Plaintiff's counsel confirmed at the hearing that he believes the Motion to Remand brings a facial attack.  (*See* Mot. at 11; ECF No. 14.)  In reality, Plaintiff's Motion to Remand brings a factual attack on Defendant's Notice of Removal.  A facial attack challenges "the form, not the substance" of the defendant's removal allegations.  *See Harris*, 980 F.3d at 700. Here, Plaintiff does not contest the "form" of Defendant's Notice of Removal; rather, she attacks Defendant's violation rate assumptions and argues they are not based on the language in the Complaint, which is the factual evidence in the record.  That is a factual attack. *See Williams v. VibrantCare Rehab., Inc.*, No. 22-16424, 2022 WL 17592428, at *1 (9th Cir. Dec. 13, 2022) (finding the plaintiff "clearly made a factual attack" when she

25-cv-2782-TWR (MSB)

attacked the "factual evidence in the record addressing the number and types of violations"). As one example, Plaintiff disputes Defendant's meal and rest break assumptions because they assume "the average California class member worked five qualifying shifts per week— something not alleged in the complaint." (Mot. at 9.) This illustrates that Plaintiff is making a factual attack. *See Harris*, 980 F.3d at 699 (finding that the plaintiff mounted a factual attack when they contested the defendant's failure to demonstrate that all members of the class worked shifts long enough to qualify for meal and rest periods). Thus, Defendant must support its jurisdictional allegations with competent proof "under the same evidentiary standard that governs in the summary judgment context." *Salter*, 974 F.3d at 964 (citation omitted).

## LEGAL STANDARD

The Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, 1711–1715, "gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount-in-controversy exceeds $5 million." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84–85 (2014). CAFA not only confers original jurisdiction on federal courts but also authorizes the removal of certain class actions to federal courts. *See* 28 U.S.C. § 1453. Generally, courts "strictly construe [] removal statute[s] against removal jurisdiction," *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); however, "no antiremoval presumption attends cases invoking CAFA," *Dart Cherokee*, 574 U.S. at 89. Unlike other removal statutes, "Congress intended CAFA to be interpreted expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

"To remove a case from a state court to a federal court, a defendant must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee*, 574 U.S. at 83 (quoting 28 U.S.C. § 1446(a)). Under CAFA, "a defendant's notice of removal need include only a plausible allegation that the amount-in-controversy exceeds the jurisdictional threshold." *Id.* at 89. A plaintiff may then challenge a defendant's notice of removal through a motion to remand. *See Moore-*

*Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (discussing 28 U.S.C. § 1447(c)).

If a plaintiff's motion to remand challenges the amount-in-controversy estimate in the defendant's notice of removal, "then the party seeking removal—and invoking the jurisdiction of the federal courts—bears the burden of demonstrating by a preponderance of the evidence that the amount in controversy exceeds $5 million." *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025) (citing *Ibarra*, 775 F.3d at 1199). "The district court's task is simply to determine if the defendant's 'reasoning and underlying assumptions are reasonable.'" *Id.* (citing *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022)). Because the court evaluates a challenged amount-in-controversy estimate under the preponderance of the evidence standard, the defendant need only establish "that the potential damage *could* exceed the jurisdictional amount." *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014) (emphasis added) (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010)). Still, "if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Ibarra*, 775 F.3d at 1199. In sum, the defendant has the burden of establishing by a preponderance of the evidence that the amount-in-controversy could exceed five million dollars; if the defendant fails to do so, the federal court lacks subject matter jurisdiction, and the case must be remanded. *See* 28 U.S.C. § 1447(c).

Importantly, the defendant's evidentiary burden "does not always require the defendant to produce evidence supporting every element of its amount-in-controversy estimate." *Thornhill v. McLane Foodservice, Inc.*, No. 25-CV-07475-EKL, 2026 WL 125197, at *5 (N.D. Cal. Jan. 16, 2026). In determining reasonableness in a wage-and-hour case, it "may make sense to expect a defendant to introduce evidence" of "the number of employees in the class." *Perez*, 131 F.4th at 808. However, "it makes little sense to require a CAFA defendant to introduce evidence of the violation rate" they believe is zero; accordingly, "a defendant can readily ascertain the violation rate by looking at the plaintiff's complaint." *Id.* Therefore, a defendant only needs to submit evidence

5

supporting an alleged violation rate if the alleged violation rate "cannot be justified by the allegations in the complaint." *Id.* at 809. Further, a defendant's "assumption is not unreasonable simply because another equally valid assumption may exist." *Id.* But assumptions must have "some reasonable ground underlying them" and cannot be based on "mere speculation and conjecture." *Ibarra*, 775 F.3d at 1199; *see also Jauregui*, 28 F.4th at 992.

## ANALYSIS

### I.    Plaintiff's Arguments

Plaintiff argues "not only are Defendant's assumptions unreasonable under the governing case law, but the Southern District has already determined that these exact same assumptions are unreasonable when asserted <u>by this Defendant</u> [i]n *Benitez v. Hyatt Corp.*, 722 F. Supp. 3d 1094 (S.D. Cal. 2024)." (Mot. at 8 (emphasis in original).) In *Benitez*, the court found Defendant's assumptions were unreasonable when "Defendant assumed that (1) the average California class member worked five qualifying shifts per week and (2) missed two meal periods and two rest periods each week" when the plaintiff has alleged Defendant "from time to time failed to provide meal and rest periods." (*Id.* (internal quotations omitted and citing *Benitez*, 722 F. Supp. 3d 1094 at 1100–01).) Plaintiff argues Defendant's assumptions in *Benitez* were "almost identical to those asserted by Defendant here . . . except that here Defendant assumes a 100% violation rate and then applies its so-called conservative estimates." (*Id.*)

### II.    Defendant's Arguments

Defendant argues that its violation-rate assumptions—two meal- and two rest-period premiums and one-half hour of unpaid work per week, coupled with derivative wage-statement and waiting-time penalties—"are modest, tethered to Plaintiff's allegations of a common course of unlawful conduct affecting the entire class, and supported by 'real evidence' of class size, workweeks, and pay rates of the type discussed in recent case law." (Opp'n at 1.) Defendant also submitted a declaration providing shift length data in response to Plaintiff's Motion to Remand. (*See* Pankhurst Decl. ¶¶ 6–7.)

### III.    The Reasonableness of Defendant's Assumptions

#### A.    *100% Violation Rate for Employees*

Defendant assumes a 100% violation rate for the number of employees who suffered violations when calculating the amount in controversy.  (*See* NOR at 9.)  Plaintiff argues Defendant's 100% violation rate assumption is unreasonable because "the complaint's language expressly restricts the violation rates, stating that Defendant '<u>at times</u>' failed to provide meal and rest periods to '<u>Plaintiff and Class Members, or some of them</u>' and does so for each stated cause of action."  (Mot. at 13 (emphasis in original) (quoting Compl. ¶¶ 16–19).)

Plaintiff's vague allegations preclude her current argument.  *See Rodriguez v. Gen. Dynamics Info. Tech., Inc.*, No. 25-CV-00626-BAS-DEB, 2025 WL 3078706, at *6 (S.D. Cal. Nov. 4, 2025) ("[I]t is Plaintiff who chose to plead his allegations with a net instead of a spear.  By doing so, Plaintiff left the Complaint subject to the reasonable inference that all class members could recover for the alleged violations.").  Problematically, Plaintiff does not allege only some of the class members suffered the violations; instead, she alleges all of them "*or* some of them" suffered the violations.  (Compl. ¶¶ 16–19 (emphasis added).)  These allegations, "when viewed in context with the class allegations, support the inference that all class members could potentially recover for these violations." *Rodriguez*, 2025 WL 3078706 at *6; *see also Perez v. Rose Hills Co.*, No. 2:24-CV-04827-JLS-PVC, 2025 WL 2631603, at *4 (C.D. Cal. Aug. 29, 2025) ("Rather than narrowing the range of reasonable interpretations, 'or' preserves the possibility that the violations were suffered by all class members.").  Accordingly, at large, Defendant's assumption of 100% of employees being impacted is reasonable.

#### B.    *Meal and Rest Breaks*

Plaintiff's Complaint alleges that "at times" Plaintiff and Class Members were not provided complete meal periods for every five hours of work and "at times" were not authorized or permitted to take complete rest periods for every four hours of work.  (Compl. ¶¶ 53, 61.)  Defendant's Notice of Removal states that Plaintiff "alleged a **practice** of meal

period violations" making it "reasonable to assume that there at least two meal period violations each week for every employee." (NOR ¶ 39 (emphasis in original).) Similarly, Defendant states "Plaintiff has alleged a **common practice** of rest period violations . . . making it "reasonable to assume that there at least two rest period violations each week for every employee." (*Id.* ¶ 45 (emphasis in original).)

### 1.   *Evidence of Qualifying Shifts*

Plaintiff argues Defendant's assumption of two missed meal and rest periods a week "implies that the average California class member worked five qualifying shifts per week— something not alleged in the complaint." (Mot. at 9.) Because "shift length is essential to evaluating whether estimates for meal and rest break amounts in controversy are reasonable, it makes sense to expect the defendant to introduce evidence of that number." *Lopez v. Advanced Drainage Sys., Inc.*, 777 F. Supp. 3d 1100, 1108 (N.D. Cal. 2025) (citing *Perez*, 131 F.4th at 807) (cleaned up). In Opposition, Defendant submitted evidence that the "565 current and former non-exempt employees . . . worked 7.3 hours per day and 4.25 days per week" in the relevant period.[1] (Pankhurst Decl. ¶ 6.)

### 2.   *Two Meal Periods and Two Rest Breaks Per Week*

Defendant relies on the Complaint's "common course of conduct" allegation to justify its assumption of two meal period violations and two rest break violations per week. (*See* Opp'n at 9–11.) Plaintiff argues Defendant's twice-a-week assumptions are "directly contrary to *Perez*, where 'at times' language supported only one missed meal break and one missed rest break per week as reasonable." (Mot. at 13; *see also id.* at 11 (stating "[m]ore restrictive phrasing, such as 'at times,' supports only minimal assumptions—e.g., one missed rest period and one missed meal period per week.").) Plaintiff's reading of *Perez* is incorrect. The Ninth Circuit in *Perez* did not find the allegation that violations

---

[1]   Because Defendant has submitted shift length data, the analysis in *Benitez* is no longer applicable. *See Benitez v. Hyatt Corp.*, 722 F. Supp. 3d 1094, 1101 (S.D. Cal. 2024) (granting the plaintiff's motion to remand when the defendant "offered no evidence regarding the average shift length worked by California class members.").

25-cv-2782-TWR (MSB)

occurred "at times" *only* supported assumptions of one missed meal break and one missed rest break per week. The Ninth Circuit explained that a complaint's language may provide multiple equally valid assumptions and one "assumption is not unreasonable simply because another equally valid assumption may exist." *Perez*, 131 F.4th at 809. Accordingly, the inclusion of "at times" language does not result in a strict upper limit of once-a-week violation assumptions.

But that does not mean that all levels of violation assumptions will reasonably reflect "at times" language in conjunction with common class allegations. The phrase "at times" means "at intervals" or "occasionally." MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/at%20times (last visited Feb. 24, 2026); *see also Thornhill v. McLane Foodservice, Inc.*, No. 25-CV-07475-EKL, 2026 WL 125197, at *5 (N.D. Cal. Jan. 16, 2026) ("Alleging that a violation occurred 'at times' . . . suggests that the conduct occurred with some regularity and frequency, but not always or even more-often-than-not."). Therefore, courts have found that a violation rate of 20% is reasonable when the complaint uses "at times" language. *See, e.g., Perez*, 2025 WL 2631603 at *5 (C.D. Cal. Aug. 29, 2025) (finding that assumptions of one meal period violation and one rest break violation per class member per week were reasonable). But Defendant alleges two missed meal periods and two missed rest periods a week for a group of 565 employees who worked 4.25 days a week with an average shift length of 7.3 hours a day. This represents an assumed 47% violation rate. The Court harbors doubt that a 47% violation rate reasonably reflects the phrase "at times."

However, the Court does not need to decide whether the twice-a-week assumption is unreasonable because Defendant also provides a more reasonable assumption of once-a--week violations. (*See* Opp'n at 22.) Violations occurring once-a-week—a 23.5% violation rate here—reasonably reflects conduct occurring occasionally or with some regularity and frequency, but not always or even more-often-than-not. *See Reed v. Benjamin Moore & Co.*, No. 1:25-CV-00214-SAB, 2025 WL 1419751, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, No. 1:25-CV-00214-KES-SAB,

25-cv-2782-TWR (MSB)

2025 WL 1601097 (E.D. Cal. June 6, 2025) (choosing to find a 20% violation rate appropriate instead of the defendant's suggested 50% violation rate when the complaint contained "policy and practice" allegations and limiting language); *Jauregui*, 28 F.4th at 996 ("[T]he district court should consider the claim under the better assumption[.]").

Lastly, Plaintiff argues that the proper assumption is 0.85 violations per week, since the average employee worked 4.25 days per week. (*See* Reply at 5.) The Court finds that both a 23.5% violation rate and a 20% violation rate are reasonable based on the language in the Complaint; therefore, because Defendant only needs to show that potential recovery could exceed $5 million, the Court accepts Defendant's reasonable assumption and adds $2,011,150 to the amount in controversy.

### C.     Minimum Wage

The Complaint alleges that "at times" Defendants failed to pay Plaintiff and Class Members minimum wage by requiring them to work off the clock including to "don and doff uniforms and/or safety equipment." (Compl. ¶ 46.) Defendant's Notice of Removal assumed "6 minutes of unpaid time per day (or 30 minutes of unpaid time per week) for alleged off-the-clock activities." (NOR ¶ 50.) Now, in Opposition, Defendant assumes "7.06 minutes per day for alleged unpaid [w]ages, including donning and doffing uniforms, and other off-the-clock work, for each of the 4.25 days that class members work on average per workweek." (Opp'n at 12.) Plaintiff challenges this violation rate based on the Complaint's "restrictive" language. (Mot. at 9.) Further, Plaintiff argues that Defendant's Opposition increased its calculation based on its new shift length data when it should have been decreased because the average employee only worked 4.25 days per week. (*See* Reply at 6.)

The Complaint's "at times" limiting language does not make the 30 minutes of unpaid time per week assumption unreasonable. Courts routinely assess minimum wage allegations on a weekly basis, not a shift basis. *See, e.g., Cocroft v. EquipmentShare.com Inc.*, No. 24-CV-00645-BAS-AHG, 2024 WL 3877274, at *9 (S.D. Cal. Aug. 19, 2024). Further, courts have found other similar assumptions of 30 minutes or one hour a week to

be reasonable. *See Soto v. Graybar Elec. Co., Inc.*, No. 1:24-CV-00520-JLT-SKO, 2025 WL 3648360, at *4, *7 (E.D. Cal. Dec. 16, 2025) (finding an assumption of one hour of minimum wage per every five shifts was reasonable when the complaint used "at times" language); *see also Cabrera v. S. Valley Almond Co., LLC*, No. 121CV00748AWIJLT, 2021 WL 5937585, at *8 (E.D. Cal. Dec. 16, 2021) (finding that an assumption of one hour of unpaid minimum wages per week was "consistent with allegations that violations occurred 'at times' and 'on occasion,'" when they were paired with policies and practices allegations). Accordingly, Defendant's assumption of 30 minutes a week of unpaid minimum wage is reasonable. While the Court also finds Plaintiff's assumption of 25.5 minutes per week is reasonable based on the language in the Complaint, because Defendant only needs to show that potential recovery could exceed $5 million, the Court accepts Defendant's reasonable assumption and adds $502,787.50 to the amount in controversy.

### D.     *Wage Statements Penalties*

Defendant applies a 100% violation rate to Plaintiff's wage statement claim. (*See* NOR ¶ 52.) Plaintiff challenges this violation rate based on the Complaint's use of "at times" and argues it should be reduced to at least a 50% violation rate. (*See* Mot. at 9; Reply at 6–7.) Defendant rebuts that the Complaint states that Defendants had "policies and practices" resulting in the failure to provide accurate wage statements which justify a 100% violation rate. (Opp'n at 17 (citing Compl. ¶ 76).) Courts have found that when meal and rest break violation rates are reasonable, a 100% wage statement calculation is also reasonable. *See Lopez v. Bellingham Marine Indus., Inc.*, No. 25-CV-00518-DAD-JDP, 2025 WL 2710458, at *10 (E.D. Cal. Sept. 23, 2025) (finding it was reasonable to assume a 100% violation rate for the plaintiff's wage statement claims when there were reasonable violation rates for the plaintiff's meal and rest break claims); *Sanchez v. Abbott Lab'ys*, No. 2:20-CV-01436-TLN-AC, 2021 WL 2679057, at *6 (E.D. Cal. June 30, 2021) ("[W]hen meal period and rest period violation rates are found reasonable, courts have held a 100% wage statement inaccuracy assumption may also be reasonable."); *see also Kraebel v. Siemens Indus., Inc.*, No. CV 25-885-GW-MARX, 2025 WL 1421383, at *5 (C.D. Cal.

Apr. 8, 2025) ("[C]ourts have held that 'at times' allegations can be sufficient to suggest one violation on each wage statement when multiple types of different violations are alleged."). Accordingly, Defendant's assumption of a 100% violation rate for inaccurate wage statements is reasonable and adds $644,000 to the amount in controversy.

### E. Unreimbursed Business Expenses

Defendant applies a 100% violation rate to Plaintiff's unreimbursed business claim and assumes $5 a week. (*See* NOR ¶ 59.) Defendant bases this assumption on the Plaintiff's "claims that she and other putative class members were required to launder their mandatory work uniforms at their own expense in addition to other undisclosed alleged expenses." (Opp'n at 20 (citing Compl. ¶ 91).) Further, Defendant relies on case law where other courts have found assumptions of similar or higher amounts reasonable. (*See id.*)

Plaintiff challenges this violation rate based on the Complaint's use of "at times" language. (Mot. at 9.) Further, in her Reply, Plaintiff alleges the amount in controversy for this claim should be $88,310, based on $5 per month for laundry expenses. (*See* Reply at 8.) Plaintiff bases this assumption on case law, not her experiences as an employee for Defendant. (*See id.*) Plaintiff also attempts to distinguish Defendant's case law by arguing "the case law cited by Defendant concerns reimbursement for cell phone expenses, not uniform laundry costs." (Reply 7–8.) This argument is odd considering Plaintiff's Complaint alleges that Defendant failed to indemnify class members for "the costs incurred in laundering mandatory work uniforms *and using cellular phones for work-related purposes*." (Compl. ¶ 21 (emphasis added).)

Defendant's assumption of $5 a week or $20 dollars a month is reasonable based on the Complaint which alleges both unreimbursed expenses for laundry and cellphones. *See Vallejo v. Sterigenics U.S., LLC*, No. 3:20-CV-01788-AJB-AHG, 2021 WL 2685348, at *6 (S.D. Cal. June 29, 2021) (finding a $25 a month estimate was reasonable when the complaint alleged unreimbursed business expenses not limited to cell phone expenses). While the Court also finds Plaintiff's assumption of half the class members incurring

laundry expenses of $5 per month is reasonable based on the language in the Complaint, because Defendant only needs to show that potential recovery could exceed $5 million, the Court accepts Defendant's reasonable assumption and adds $176,620 to the amount in controversy.

### F.    *Waiting Time Penalties*

Plaintiff's waiting time penalties claim is derivative of her meal and rest period claims, and she asserts the same arguments about Defendant's assumptions being unreasonable.  (*See* Mot. at 10.)  Defendant's Opposition and supplemental evidence calculate waiting time penalties for 245 former employees earning $21.61 per hour on average for an average of 6.63 hours per day.  (*See* Opp'n at 19.)  Importantly, "[t]o be entitled to recover waiting time penalties, each putative class member need suffer only ***one*** of the other injuries alleged in the complaint." *Valero v. MKS Instruments*, No. 8:24-CV-01948-JWH-ADS, 2025 WL 72171, at *5 (C.D. Cal. Jan. 8, 2025) (emphasis in original).  Because the Court finds Defendant has made other reasonable assumptions, the Court also finds Defendant's waiting time assumption is reasonable and adds $1,053,066.10 to the amount in controversy.

### G.    *Attorneys' Fees*

Defendant applies 25% in attorneys' fees to the amount in controversy, which Plaintiff does not contest. (*See* Opp'n at 21; Reply at 8.)  The Court's analysis of attorney's fees, however, is constrained by the Ninth Circuit's instruction that "the amount of attorneys' fees at stake must take into account [] statutory and contractual restrictions." *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 796 (9th Cir. 2018).  And in California, "the attorneys' fees shifting provisions in California Labor Code §§ 218.5 and 1194 do not apply to legal work relating to meal and rest period claims[.]" *Id.* (*quoting Kirby v. Immoos Fire Prot., Inc.*, 53 Cal. 4th 1244, 1255 (2012)).  Therefore, the 25% in attorneys' fees should not be applied to Plaintiff's meal and rest break claims.  Accordingly, applying 25% to all claims other than Plaintiff's meal and rest break claims, the Court adds attorneys' fees of $594,118.40 to the amount in controversy.

*H.*    *Conclusion*

Adding together Defendant's reasonable assumptions, the amount in controversy is $4,981,742.01. Because the amount in controversy does not exceed $5 million, Defendant has failed to establish the Court has jurisdiction over this case under CAFA. Accordingly, the Court **GRANTS** Plaintiff's Motion to Remand.

## IV.    Plaintiff's Request for Attorneys' Fees and Costs

Plaintiff requests $7,500 in attorneys' fees and costs in bringing the instant motion. (*See* Mot. 18–19.) "Absent unusual circumstances, attorney's fees should not be awarded under § 1447(c) when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 132 (2005). As this Order illustrates, the amount in controversy calculation is very close to exceeding $5 million. The Court does not find Defendant lacked an objectively reasonable basis for removal. As such, the Court **DENIES** Plaintiff's request for attorneys' fees in bringing the instant motion.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to Remand, **REMANDS** this action to the Superior Court for the State of California, County of San Diego, and **DENIES** Plaintiff's request for attorneys' fees and costs in bringing the motion.

**IT IS SO ORDERED.**

Dated:  March 31, 2026

_____
Honorable Todd W. Robinson
United States District Judge

14

25-cv-2782-TWR (MSB)